No. DA 06-0466

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 121N

IN RE THE PARENTING OF
J.M. and R.M., JR.,

      Youths in Need of Care.

APPEAL FROM:    The District Court of the Thirteenth Judicial District,
                      In and For the County of Yellowstone, Cause No. DN 2003-086,
                      Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Connie Camino, Attorney at Law, Billings, Montana

        For Respondent:

                Hon. Mike McGrath, Montana Attorney General, Mark W. Mattioli,
                Assistant Attorney General, Helena, Montana

                Dennis Paxinos, Yellowstone County Attorney, Billings, Montana

        For Natural Mother:

                Roy W. Johnson, Attorney at Law, Billings, Montana

        For Guardian Ad Litem:

                Patrick E. Kenney, Attorney at Law, Billings, Montana

                            Submitted on Briefs:  March 7, 2007

                                    Decided:  May 22, 2007

Filed:

                            _____
                                       Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 S.M. and R.D.M., Sr. (hereinafter R.M.) are the biological parents of J.M. and R.D.M., Jr. (hereinafter Junior). J.M. was born in August 2003 in Portland, Oregon, and Junior was born in Montana in September 2004. Both children were removed from S.M.'s care at the time of their births and subsequently adjudicated youths in need of care (YINC). S.M.'s parental rights were terminated on July 7, 2005. R.M.'s parental rights were terminated on May 1, 2006. R.M. appeals the Thirteenth Judicial District Court's order terminating his rights with respect to both children. We affirm.

¶3 R.M. has a lengthy criminal history with his earliest recorded criminal offense occurring in 1975 just before his twelfth birthday. Through the rest of his years as a minor, he continued to commit various offenses resulting in placements in juvenile wards, alternative schools, and Pine Hills Youth Correctional Facility in Miles City, Montana. His adult criminal record, which according to his own testimony during the September 2005 custody hearing resulted in him spending fourteen of his then twenty-three adult years in prison, includes numerous drug-related offenses.

¶4 At the time the District Court entered its termination order in May 2006, R.M. had been incarcerated since December 31, 2003, at Montana State Prison (MSP) on two felony charges—Criminal Possession of Dangerous Drugs and Tampering With or Fabricating Physical Evidence. R.M. was designated a Persistent Felony Offender and received a twenty-year prison sentence on these charges. He was parole eligible on May 28, 2006, but it appears parole was denied at that time. If he serves his entire sentence, his discharge date is May 24, 2021. As a result of the children's removal from S.M.'s custody and R.M.'s incarceration, R.M. has had nine supervised visits with J.M. since her birth and has never met Junior.

¶5 R.M.'s first treatment plan covered the period from December 15, 2004, to April 25, 2005. His second treatment plan covered the period from April 25, 2005, to August 25, 2005. Both plans contained numerous goals designed to assist R.M. toward reunification with his children. To that end, two important goals of both plans were to help R.M. improve his relationships with his children and improve his parenting skills necessary to provide for the children's physical, emotional and medical needs. R.M.'s treatment plans also contained eleven specific tasks designed to assist R.M. in meeting these goals. While four of these tasks were inapplicable in the prison setting, e.g., refraining from criminal activity and submitting to drug testing, the other seven tasks were designed to be completed while he was incarcerated at MSP. Those seven tasks included completing chemical dependency treatment, anger management classes and the Cognitive Principles and Restructuring Program (CP&R), maintaining weekly contact with his social worker, maintaining prison employment, and attending parenting classes,

3

among others. Testimony indicated that R.M. fully completed two tasks, partially completed two tasks, and failed to successfully complete three important tasks—to maintain prison employment, successfully complete CP&R, and successfully complete Anger Management classes.

¶6 The District Court pointed out the many opportunities presented to R.M. to deal with his anger, change his attitude, and learn valuable skills and apply them to his daily life. The court also noted that R.M. continually failed. The District Court determined that the best interests of J.M. and Junior would be served by terminating R.M.'s parental rights based on his continued display of an unwillingness or inability to change his negative behavior. The court found:

> The lifetime patterns of drug usage, criminal activity, probation violations, lack of stability, failure to accept responsibility, excuses, minimalization, and failure to follow a treatment plan have been exhibited by R.D.M., Sr., in this case. He has been given multiple chances to change or improve in this case over the years but has repeatedly failed.

¶7 The District Court concluded that R.M. had not completed his treatment plans as required by law and that under § 41-3-604(1), MCA (2003)(length of time a child has been in foster care), it was in the children's best interests to terminate R.M.'s parental rights. It further concluded that the conduct and condition that rendered R.M. unfit, unable or unwilling to parent his children adequately was unlikely to change within a reasonable time. Lastly, the District Court relied on §§ 41-3-609(1)(f), -609(2)(c) and (d), and -609(3), MCA (2003), and held that termination was proper.

¶8 R.M. argues on appeal that his inability to complete his treatment plan was the fault of the prison, the boot camp program and the Department. He also claims that the

4

District Court erred by not allowing him to present evidence designed to encourage the court to place his children with his mother.

¶9 We review a district court's findings of fact to determine if they are clearly erroneous, and its conclusions of law to determine whether it correctly interpreted and applied the law. *In re A.N.W.*, 2006 MT 42, ¶ 28, 331 Mont. 208, ¶ 28, 130 P.3d 619, ¶ 28 (citation omitted). We review a district court's ultimate decision to terminate parental rights for abuse of discretion. *A.N.W.*, ¶ 29. This Court will neither reweigh conflicting evidence nor substitute its judgment regarding the strength of the evidence for that of the district court. *A.N.W.*, ¶ 29.

¶10 Sections 41-3-609(1)(f)(i) and (ii), MCA, require complete compliance with a treatment plan, as opposed to partial or even substantial compliance. *In re T.L.*, 2005 MT 256, ¶ 14, 329 Mont. 58, ¶ 14, 122 P.3d 453, ¶ 14. As to any restrictions on R.M.'s testimony, because placement of the children was not the issue before the court at the termination hearing, the court did not err in denying R.M. the opportunity to testify concerning placement prospects.

¶11 It is appropriate to decide this case pursuant to our Order of February 11, 2003, amending Section 1.3 of our 1996 Internal Operating Rules and providing for memorandum opinions. It is manifest on the face of the briefs and the record before us that the District Court's findings of fact are supported by substantial evidence, and its legal conclusions are correct. We conclude the District Court did not abuse its discretion by terminating R.M.'s parental rights.

¶12     We affirm the judgment of the District Court.


                                        /S/ PATRICIA COTTER


We Concur:

/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ JIM RICE